UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLAND HARDAWAY,

        Petitioner,

                              CASE NO. 13-13144

v.                               HONORABLE GEORGE CARAM STEEH

SHARON L. BURT,

        Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,**
**BUT GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

      State prisoner Holland Hardaway ("petitioner") has filed a pro se application for

the writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The habeas petition

challenges petitioner's 1994 conviction for second-degree murder, Mich. Comp. Laws §

750.317, and possession of a firearm during the commission of a felony (felony firearm),

Mich. Comp. Laws § 750.227b.  Petitioner currently is serving a sentence of forty to

eighty years in prison for the murder conviction.  He alleges in his habeas petition that:

(1) his trial attorney was ineffective; (2) the trial court violated the Michigan Code of

Judicial Conduct and his right to due process by failing to disqualify itself and by

denying his request to appeal the court's ruling; (3) the trial court violated his right to

present a defense and to confront the witnesses against him by limiting his cross-

examination of a witness; (4) the jury instruction on intent was defective; (5) the trial

court's instruction to the deadlocked jury was an incorrect statement of the law; (6) the

prosecutor committed misconduct by arguing facts not in evidence and by commenting

on a possible motive for the shooting; (7) the prosecutor withheld exculpatory material about a witness's prior statements; and (8) he was denied a meaningful and speedy appeal. Petitioner procedurally defaulted some of these claims, and the state appellate court's rejection of the remaining claims was objectively reasonable. The Court therefore will deny the habeas petition.

## I. Background

### A. The Charges, Verdict, Sentence, and First Appeal

Petitioner was charged in Wayne County, Michigan with one count of open murder,[1] one count of assault with intent to commit murder, and one count of felony firearm, second offense. The evidence at petitioner's jury trial in the former Recorder's Court for the City of Detroit established that

> [o]n the evening of October 2, 1993, undercover Detroit police officers Clifton Counts and Norman Spruiel parked their unmarked cars on a dead end street and stood outside discussing the details of a manhunt they were conducting to find a murder suspect. Wendell Hardaway, defendant's cousin, owned an auto body repair shop nearby. He claimed that a suspicious-looking vehicle drove by and parked down the street. Defendant and Gregory McDonald were also at the shop working on cars. Defendant briefly went home but returned to assist Wendell in closing and securing the shop for the night. Defendant admittedly retrieved a rifle from his home before returning to the shop. Defendant claimed that his cousin was nervous about the suspicious vehicle parked down the road.
>
> Defendant testified that he saw a man with a gun standing by a parked vehicle. Defendant claims to have stopped his vehicle to ask the man "what he was doing." According to defendant's version of events, the armed man fired at him and defendant shot back in self-defense. Defendant denied knowing that Spruiel was a police officer.

---

[1] When a defendant is charged with open murder, no specification of first- or second-degree murder is required at the initial stage of the case. People v. Johnson, 427 Mich. 98, 107-08; 398 N.W.2d 219, 222-23 (1986).

2

> Officer Counts, on the other hand, testified that defendant drove slowly by in a black Camaro twice while he and Officer Spruiel talked.  At some point, two men in a gold car—Wendell Hardaway and McDonald—drove adjacent to the officers and shined the car's headlights on them.  The men queried "what's happening," at which point Counts asserted that he revealed his badge and told the men to move along.  Defendant then drove up in his Camaro, pulled to a stop and alighted from the vehicle.  Counts saw defendant holding a rifle and heard four shots. Counts saw Spruiel collapse and heard defendant say, "[F]ucking police." Counts shot toward defendant and the gold car, whose passenger also had a gun. Defendant and his associates in the gold car returned fire and then drove away from the scene.  Spruiel died from his gunshot wounds.

People v. Hardaway, No. 304814, 2013 WL 132710, at *1 (Mich. Ct. App. Jan. 10, 2013).

On May 18, 1994, the jury acquitted petitioner of the assault charge, but found him guilty of second-degree murder and felony firearm.  On June 8, 1994, the trial court sentenced petitioner to five years in prison for the felony firearm conviction and to a consecutive term of forty to eighty years in prison for the murder conviction.

Petitioner filed a claim of appeal through trial counsel, but the Michigan Court of Appeals dismissed the appeal for want of prosecution because the defense attorney failed to file a timely appellate brief.  See People v. Hardaway, No. 177099 (Mich. Ct. App. Aug. 18, 1995).  Petitioner then filed a delayed application for leave to appeal through another attorney.  The Michigan Court of Appeals dismissed the delayed application as untimely.  See People v. Hardaway, No. 202045 (Mich. Ct. App. Sept. 25, 1997).  On September 29, 1998, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it.  See People v. Hardaway, 459 Mich. 876; 585 N.W.2d 303 (1998) (table).

3

**B.  The Post-Conviction Motion and Subsequent Appeal**

On or about December 21, 1998, petitioner filed a motion for relief from judgment in which he alleged that:  (1) the trial court's comments to the deadlocked jury were coercive; (2) the trial court's failure to read the medical examiner's testimony to the jury deprived him of a fair trial; (3) the trial court abused her discretion in denying petitioner's motion for mistrial; (4) the prosecutor's statements resulted in misconduct; and (5) he was denied a fair trial due to ineffective assistance of counsel.  The trial court denied petitioner's motion on the merits.  The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented," People v. Hardaway, No. 222000 (Mich. Ct. App. Mar. 30, 2000), and on December 12, 2000, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  See People v. Hardaway,  463 Mich. 934; 622 N.W.2d 64 (2000) (table).[2]

**C.  The First Habeas Corpus Petition**

In 2001, petitioner filed a federal habeas corpus petition in which he alleged that: (1) the trial court gave a coercive deadlocked-jury instruction; (2) trial counsel was ineffective for failing to (a) object to the trial court's refusal to read back testimony and (b) file a timely appellate brief; (3) the trial court erred in denying the jury's request to re-read testimony; and (4) the prosecutor (a) made an argument unsupported by the evidence and (b) improperly cross-examined petitioner on the arrest of his girlfriend.

The Court initially dismissed the habeas petition for failure to comply with the one-year statute of limitations for habeas petitions.  See Hardaway v. Robinson, No. 01-70230 (E.D. Mich. Mar. 8, 2002).  Petitioner appealed the Court's decision, but the

_____

[2]  Justice Marilyn Kelly voted to grant leave to appeal.

4

United States Court of Appeals denied a certificate of appealability because petitioner failed to make a substantial showing of the denial of a federal constitutional right.  See Hardaway v. Robinson, No. 02-1415 (6th Cir. Oct. 7, 2002).  On March 24, 2003, the United States Supreme Court denied petitioner's application for a writ of certiorari.  See Hardaway v. Robinson, 538 U.S. 926 (2003).

Petitioner subsequently moved for relief from judgment under Federal Rule of Civil Procedure 60(b) on the ground that the Court erred when it concluded that the statute of limitations ran more than one year.  The Court then reinstated the habeas petition and vacated its judgment.  See Hardaway v. Robinson, No. 01-70230 (E.D. Mich. Mar. 11, 2005, and Mar. 23, 2006). The Court subsequently denied petitioner's habeas corpus petition on the merits.  See Hardaway v. Robinson, No. 01-70230 (E.D. Mich. Jan. 3, 2008).  The Court granted a certificate of appealability on two issues:  (1) whether the state trial court's supplemental jury instruction to the deliberating jury was coercive; and (2) whether petitioner's first appellate attorney was ineffective for failing to file a timely appellate brief.

The United States Court of Appeals for the Sixth Circuit found no merit in petitioner's claim about the allegedly coercive jury instruction.  The Sixth Circuit nevertheless held that appellate counsel's failure to file a timely appellate brief deprived petitioner of a direct appeal, which was not cured by the ability to appeal from later state collateral proceedings.  Accordingly, the Court of Appeals reversed this Court's denial of habeas relief and remanded the case with instructions to issue a conditional writ directing the state to afford petitioner a direct appeal.  See Hardaway v. Robinson, 637

5

F.3d 640 (6th Cir. 2011), amended, 655 F.3d 445 (6th Cir. 2011).  On remand, this

Court granted a conditional writ of habeas corpus on petitioner's claim that his first

appellate attorney was ineffective.  See Hardaway v. Robinson, No. 01-70230 (E.D.

Mich. June 23, 2011).

### D.  The Appeal of Right and Second Habeas Corpus Petition

Following this Court's grant of a conditional writ of habeas corpus, the state court

appointed counsel for petitioner and provided him with a new appeal of right.  The

Michigan Court of Appeals subsequently affirmed petitioner's convictions and sentence.

See People v. Hardaway, No. 304814, 2013 WL 132710 (Mich. Ct. App. Jan. 10, 2013).

On May 28, 2013, the Michigan Supreme Court denied leave to appeal because it was

not persuaded to review the questions presented to it.  See People v. Hardaway, 494

Mich. 856; 830 N.W.2d 393 (2013) (table).

Finally, on July 19, 2013, petitioner filed the habeas corpus petition now before

the Court.  Respondent asserts in an answer to the petition that petitioner failed to

exhaust state remedies for his eighth claim and that petitioner procedurally defaulted

some of his other claims.  Respondent also asserts that the state courts' rejection of

petitioner's claims was not contrary to clearly established federal law, unreasonable

applications of clearly established federal law, or unreasonable determinations of the

facts.  Petitioner disagrees and maintains that he did exhaust state remedies for all his

claims and that he preserved his claims for appellate review.

## II.  Standard of Review

### A.  Generally

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  Harrington v. Richter,

562 U.S. 86, 97 (2011).  Petitioner contends that AEDPA does not apply to his case

because it was enacted in 1996 after he was convicted and filed a claim of appeal.  See

petitioner's reply brief, ECF No. 14, at 2, 4-5.  Petitioner, however, filed his habeas

petition after the effective date of AEDPA.  Consequently, the deferential standard of

review set forth in AEDPA, 28 U.S.C. § 2254(d), governs his case.  Lindh v. Murphy,

521 U.S. 320, 336 (1997).

Pursuant to § 2254, the Court may not grant a state prisoner's application for the

writ of habeas corpus unless the state court's adjudication of the prisoner's claims on

the merits

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from [the

7

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)."  Renico v. Lett, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 103.

**B.  Procedurally Defaulted Claims**

Respondent contends that some of petitioner's claims are procedurally defaulted because the Michigan Court of Appeals determined that petitioner waived review of one of his claims and that he failed to preserve certain other claims for appellate review.  A procedural default is "a critical failure to comply with state procedural law."  Trest v.

8

Cain, 522 U.S. 87, 89 (1997 ).  The doctrine of procedural default prohibits a federal

court from reviewing the merits of a habeas petitioner's claims, including constitutional

claims, if a state court declined to hear the claims because the prisoner failed to abide

by a state procedural rule.  Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).  In this

Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if
> each of the following four factors is met:  (1) the petitioner failed to comply
> with a state procedural rule; (2) the state courts enforced the rule; (3) the
> state procedural rule is an adequate and independent state ground for
> denying review of a federal constitutional claim; and (4) the petitioner has
> not shown cause and prejudice excusing the default."  [Jalowiec v.
> Bradshaw, 657 F.3d 293, 302 (6th Cir. 2011)].  To determine whether a
> state procedural rule was applied to bar a habeas claim, [courts] look "to
> the last reasoned state court decision disposing of the claim."  Guilmette v.
> Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

Henderson v. Palmer, 730 F.3d 554, 560 (6th Cir. 2013).

### III.  Petitioner's Claims

## A.  Trial Counsel

Petitioner alleges that his trial attorney provided constitutionally ineffective

assistance.  Specifically, petitioner contends that his trial attorney was ineffective for

failing to interview Dr. Golwala and Sergeant Davis, adequately investigate the medical

examiner's findings that Officer Spruiel was shot in the back, and introduce a lab report,

which showed no bullet holes entered the officer's vest or jacket.  Petitioner further

alleges that trial counsel was ineffective for failing to:  object to the trial court's jury

instruction that medical testimony was not admitted in evidence; move to dismiss the

first-degree murder charge; and disclose his prior friendship with the deceased victim.

9

The Michigan Court of Appeals reviewed petitioner's claims under Strickland v. Washington, 466 U.S. 668 (1984), and found no merit in petitioner's claims.

**1. Clearly Established Federal Law**

Under Strickland, a habeas petitioner must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The "deficient performance" prong of the Strickland test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

To demonstrate that counsel's performance prejudiced the defense, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111-12 (quoting Strickland, 466 U.S. at 693).

### 2.  Application

#### a.  Failure to Interview Witnesses, Investigate the Medical Examiner's Findings, and Introduce a Lab Report

Petitioner alleges that his trial attorney was ineffective for failing to interview Dr. Golwala and Sergeant Davis.  Petitioner also alleges that his trial attorney should have introduced a lab or hospital report regarding the victim's bulletproof vest or jacket and adequately investigate the medical examiner's findings regarding the location of the victim's wounds.  Although the medical examiner testified at trial that Officer Spruiel was shot in the back (5/9/94 Trial Tr., at 132-33, 135, 138), petitioner contends that Dr. Golwala and Sergeant Davis would have contradicted the medical examiner's report and said that Officer Spruiel was not shot in the back.  Petitioner also contends that defense counsel should have introduced a laboratory report to show that there were no bullet strikes on the back of the bulletproof vest or jacket worn by Officer Spruiel.

Petitioner has not established that Officer Spruiel actually wore a bulletproof  vest or jacket on the night of the shooting.  Furthermore, the parties stipulated that, if Dr. Golwala were to testify, he would say that one bullet entered Officer Spruiel's right side under the armpit and that he recovered a bullet from Spruiel's abdomen.  (5/12/94 Trial Tr. at 859).  The parties also stipulated that Dr. Golwala would say there was another gunshot wound to the left flank and that no bullet was removed from that wound. (5/13/95 Trial Tr., at 914-15.)

These stipulations were favorable to the defense theory because Dr. Golwala's findings tended to contradict the medical examiner's conclusion regarding the location of the bullet wounds.  And, to his credit, defense counsel reminded the jurors of the

stipulations and the discrepancies in the two doctors' descriptions of the gunshot wounds during his closing argument.  (Id. at  945-47.)

The Court concludes that defense counsel's failure to interview Dr. Golwala and Sergeant Davis and challenge the medical examiner's findings did not amount to deficient performance because the jury learned of the conflicting medical opinions through the parties' stipulations.  The conclusion of the Michigan Court of Appeals – that the outcome of petitioner's trial would not have been different if Dr. Golwala or Sergeant Davis had testified –  was objectively reasonable.

### b.  Failure to Object to a Jury Instruction

Petitioner alleges that defense counsel was ineffective for failing to object to the trial court's jury instruction to the deliberating jury that the medical testimony was not admitted in evidence.  The trial court's actual comment to the jury is not part of the record before the Court.  The Court therefore cannot confirm that the trial court actually made the disputed remark.

The record does indicate that the deliberating jury requested the medical examiner's testimony on Officer Spruiel's wounds and their location and the surgeon's report on the officer's wounds.  The trial court then informed the parties in the jury's absence that it would send the jurors home for the day and inform them in the morning that these items were not admitted in evidence.  (5/17/94 Trial Tr. at 1028.)

As noted above, the transcript of the next day of trial is not part of the record before the Court.  But even if the trial court incorrectly informed the jurors that the medical testimony was not admitted in evidence, the jury obviously heard the medical

12

examiner's testimony.  Additionally, the trial court instructed the jury that the medical examiner was an expert witness who was permitted to give an opinion.  The trial court also explained to the jurors that they must decide whether they believed the expert opinion, how important they thought the expert opinion was, and whether the opinion made sense.  (5/13/94 Charge to the Jury, at 10-11.)

Furthermore, the attorneys notified the jury on two occasions that they were stipulating to the surgeon's report that one bullet entered Officer Spruiel's right side under the armpit and that Officer Spruiel suffered another gunshot wound to the left flank.  In light of the parties' stipulation and the trial court's instruction on how to evaluate the medical examiner's testimony, a misstatement about the medical testimony not being in evidence was harmless, and defense counsel's failure to object to the trial court's statement could not have prejudiced the defense.

### c.  Failure to Move to Dismiss a Charge

Petitioner blames his trial attorney for failing to move to dismiss the first-degree murder charge at the close of the prosecution's proofs.  According to petitioner, the prosecution failed to prove the elements of first-degree murder.

Petitioner was acquitted of first-degree murder.  Thus, the alleged failure to move to dismiss the charge of first-degree murder did not prejudice the defense.

Furthermore, the Michigan Court of Appeals determined that the evidence at trial was sufficient to establish that petitioner committed premeditated murder.  To prove first-degree murder, as charged in this case, the prosecutor was required to prove that petitioner "intentionally killed the victim and that the act of killing was premeditated and

13

deliberate." People v. Ortiz, 249 Mich. App. 297, 301; 642 N.W.2d 417, 420 (2001).

"Premeditation and deliberation require sufficient time to allow the defendant to take a

second look at his actions.  This time interval may be minimal."  People v. Gonzalez,

178 Mich. App. 526, 531; 444 N.W.2d 228, 230 (1989) (internal citation omitted).  "The

elements of premeditation and deliberation may be inferred from all the facts and

circumstances surrounding the incident," People v. Haywood, 209 Mich. App. 217, 229;

530 N.W.2d 497, 503 (1995), "including the type of weapon used and the location of the

wounds inflicted," People v. Berry, 198 Mich. App. 123, 128; 497 N.W.2d 202, 204

(1993).

> The Michigan Court of Appeals summarized the relevant evidence as follows:
>
> Officer Counts testified that defendant had twice driven slowly past the
> location where Spruiel and Counts had parked on Prairie Street, and
> minutes later he turned onto Prairie Street yet again.  The testimony of
> multiple witnesses established that before returning to Prairie Street for
> the third time, defendant went to his nearby residence and retrieved a rifle.
> Counts additionally testified that defendant stopped his car adjacent to
> Spruiel's unmarked car, alighted from his vehicle, fired repeatedly at
> Spruiel and struck him twice, and thereafter declared, "[F]ucking police."

Hardaway, 2013 WL 132710, at *5.

The Court of Appeals reasonably concluded that "[t]hese circumstances suffice[d]

to establish that [petitioner] had an opportunity to reconsider his actions in the course of

his assault of Spruiel, and thus that he premeditated and deliberated the killing."  Id.

Because the evidence was sufficient to support a conviction for first-degree murder,

defense counsel's failure to move for a directed verdict of acquittal did not amount to

deficient performance.  And the allegedly deficient performance did not result in

14

sufficient prejudice so as to satisfy the second prong of <u>Strickland</u>.  <u>Maupin v. Smith</u>, 785 F.2d 135, 140 (6th Cir. 1986).

### d. Failure to Disclose a Close Relationship with the Victim

Petitioner's final claim about trial counsel is that counsel failed to timely disclose that he had a long friendship with Officer Spruiel.  Petitioner implies that his attorney operated under a conflict of interest, but the Michigan Court of Appeals found it abundantly clear from the record that defense counsel bore no conflict of interest.

The Supreme Court has said that "an actual conflict of interest" means "a conflict <u>that affected counsel's performance</u> —as opposed to a mere theoretical division of loyalties."  <u>Mickens v. Taylor</u>,  535 U.S. 162, 171 (2002) (emphasis in original). Petitioner's claim arose on the third day of trial when defense counsel moved for a mistrial on the basis of the trial court's pattern of conduct.  Defense counsel mentioned the trial court's conduct and then said,

> I'll state for the record, so we can get it all out, I've known Norman Spruiel, I played ball with Norman Spruiel, I was a softball buddy with him, I also roller skated with Norman Spruiel.

(5/11/94 Trial Tr., at 491.)

Despite defense counsel's friendship with the murder victim, the record as a whole indicates that defense counsel was zealous in his representation of petitioner. He cross-examined prosecution witnesses, put petitioner on the stand, and produced one other defense witness.  Defense counsel also made an opening statement, a closing argument, a motion to introduce evidence, and frequent objections.  Additionally, he stated that, despite his friendship with the victim, his duties as a lawyer were to

15

petitioner and to seek a fair trial for him (id.) and that he gratefully accepted his

responsibility to represent petitioner (5/13/94 Trial Tr., at 958).

 The Michigan Court of Appeals correctly noted that petitioner

> has presented nothing beyond his bald assertion that defense counsel
> failed to mention his acquaintance with Officer Spruiel prior to trial. . . .
> [T]he record reveals that defense counsel vigorously contested the
> prosecutor's case and pursued defendant's self-defense theory throughout
> trial.  Indeed, defense counsel's efforts yielded a second-degree murder
> conviction despite considerable evidence supporting premeditation.

Hardaway, 2013 WL 132710, at *3.

 Petitioner has failed to show an actual conflict of interest resulted from his

attorney's friendship with Officer Spruiel.  Therefore, the state court's decision was

objectively reasonable.

### 3.  Conclusion on Petitioner's Claims about Trial Counsel

 The Michigan Court of Appeals found no merit in petitioner's claims about trial

counsel.  This conclusion was not contrary to, or an unreasonable application of,

Strickland or Mickens.  Petitioner therefore has no right to relief on the basis of his

ineffective-assistance-of-counsel claim.

## B.  The Trial Court's Conduct

 Petitioner's second claim pertains to the trial court's various rulings during trial

and the trial court's handling of petitioner's motion to disqualify the court.  Petitioner first

raised this issue during trial, claiming that the cumulative effect of the trial court's rulings

and disagreements with defense counsel deprived him of a fair trial.  The trial court

declined to recuse itself, and when defense counsel asked for permission to appeal the

trial court's decision to the chief judge of the trial court pursuant to Michigan Court Rule

16

2.003, the trial court denied that request as well.  (5/11/94 Trial Tr. at 496-498, 581-82.)

Petitioner contends that the trial court violated his right to due process, gave the

appearance of impropriety, and violated the Michigan Code of Judicial Conduct by not

disqualifying itself and by prohibiting him from appealing the trial court's denial of his

motion to disqualify the trial court.

The Michigan Court of Appeals adjudicated petitioner's judicial-bias claim on the

merits and found no arguable basis for judicial disqualification.  As for the trial court's

failure to refer the motion to disqualify to the chief judge, the Court of Appeals stated

that petitioner had failed to explain how the absence of a referral to the chief judge

resulted in a miscarriage of justice.

"[F]ederal habeas corpus relief does not lie for errors of state law."  Lewis v.

Jeffers, 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Thus, the alleged violations

of the Michigan Court Rule on disqualification and the Michigan Code of Judicial

Conduct are not grounds for habeas corpus relief.

To prevail on his due process claim, petitioner must show "there was bias, or

such a likelihood of bias or an appearance of bias that the judge was unable to hold the

balance between vindicating the interests of the court and the interests of the accused."

Ungar v. Sarafite, 376 U.S. 575, 588 (1964).  "[J]udicial rulings alone almost never

constitute a valid basis for a bias or partiality motion. . . .  Almost invariably, they are

proper grounds for appeal, not for recusal."  Liteky v. United States, 510 U.S. 540, 555

(1994).  Additionally, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  Id.  A judge's rdinary efforts at courtroom administration remain immune from a charge of bias or partiality.  Id. at 556.

Contrary to what petitioner says, there is no indication in the record that the trial court knew Officer Spruiel or that the trial court prejudged petitioner's case on the basis of the testimony at the preliminary examination.  The Michigan Court of Appeals, moreover, correctly noted that,

> [a]lthough the circuit court overruled most of defense counsel's objections throughout the lengthy proceedings, it did not do so in a manner that suggested that the court had premised its rulings on any actual, personal bias.  The circuit court routinely and cordially allowed the parties to state or elaborate their positions with respect to evidentiary and other issues.

Hardaway, 2013 WL 132710, at *6.

The Court of Appeals reasonably concluded that the trial court's rulings did not display "a deep-seated favoritism or antagonism that would make fair judgment impossible."  Liteky, 510 U.S. at 555.  Petitioner therefore has no right to relief on his judicial-bias claim.

## C.  Right to Defend and Confront

Petitioner argues next that the trial court deprived him of his right to present a defense and his right to confront the witnesses against him by limiting his cross-examination of Officer Counts.

18

### 1. Clearly Established Federal Law

A defendant in a criminal prosecution is entitled to "a meaningful opportunity to present a complete defense," California v. Trombetta, 467 U.S. 479, 485 (1984), and to confront the witnesses against him, Davis v. Alaska, 415 U.S. 308, 315 (1974). "The right of confrontation includes the right to cross-examine witnesses," Richardson v. Marsh, 481 U.S. 200, 206 (1987), and "the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable." Pennsylvania v. Ritchie, 480 U.S. 39, 51-52 (1987).

> "[T]his does not mean that the defendant is free to impeach a witness 'in whatever way, or to whatever extent the defense might wish.' " [United States v. Holden, 557 F.3d 698, 704 (6th Cir. 2009)] (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). "[T]rial judges retain wide latitude to impose reasonable limits on interrogation that is repetitive or only marginally relevant." [United States v. Obiukwu, 17 F.3d 816, 821 (6th Cir. 1994)].

> "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." Van Arsdall, 475 U.S. at 680, 106 S.Ct. 1431 (internal quotation marks omitted). "The key issue is whether the jury had enough information to assess the defense's theory of the case despite the limits placed on cross-examination." Holden, 557 F.3d at 704. "So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." United States v. Cueto, 151 F.3d 620, 638 (7th Cir.1998); accord United States v. Fields, 763 F.3d 443, 464 (6th Cir.2014).

United States v. Callahan, 801 F.3d 606, 623©24 (6th Cir. 2015), cert. denied sub nom. Hunt v. United States, No. 15-8171, 2016 WL 659739 (U.S. Mar. 21, 2016).

Furthermore, although the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote," trial judges may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 547 U.S. 319, 326 (2006). A reviewing "court's duty 'is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered [the] petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights.' " Lewis v. Wilkinson, 307 F.3d 413, 420 (6th Cir. 2002) (quoting Logan v. Marshall, 680 F.2d 1121, 1123 (6th Cir. 1982)).

### 2. Evidence of Prior Shootings

During petitioner's trial, defense counsel sought permission to ask Officer Counts about three incidents where Counts and Officer Spruiel fired their weapons at people. The incidents in question pertained to

> a June 1990 incident when Counts interrupted a man removing hubcaps from his unmarked police car; the man "resisted [arrest] ... and shouted at a person sitting inside of a red truck to help," the truck's driver "accelerated backwards toward[ ]" Counts, and Counts "supposedly shouted for the red truck to stop and fired a shot at the occupant." In January 1992, Counts observed a fleeing suspect "reach[ ] in his jacket as if to draw a weapon." Counts fired at the suspect and shot his leg. With respect to a February 1992 incident involving Spruiel, the officer reported "hearing a series of shots, observing a black male ... running toward him ... [and an] unidentified male standing in the street shooting ... in the officer's direction," which prompted Spruiel to draw his gun and "yell [ ] police, [but] they continued shooting"; Spruiel "fire[d] approximately six shots at the person firing the gun," then moved closer toward the gunman and "fired approximately six more shots" before the gunman fled.

20

Hardaway, 2013 WL 132710, at *8.

Defense counsel wanted to show that Officer Counts had experience with shooting at people and was inclined to react to confrontations by shooting. (5/10/94 Trial Tr., at 258-59.) The trial court ruled that evidence of the prior shootings was a collateral matter that could not be introduced at petitioner's trial. (Id., at 252-61.)

Petitioner maintains that the evidence was material and relevant. The Michigan Court of Appeals agreed "that the specific instances of conduct proffered by [petitioner] possessed some relevance toward proving [petitioner's] reasonable apprehension of harm at the time of the shooting." Hardaway, 2013 WL 132710, at *9. The Court of Appeals nevertheless concluded that evidence of the prior shootings was inadmissible to support petitioner's self-defense theory and that the trial court reached the correct result when it denied petitioner's motion to admit the evidence because petitioner did not claim he was aware of the prior shootings when he fired at Officer Spruiel. The Court of Appeals also stated that, because the proffered evidence was inadmissible to support petitioner's self-defense theory, the trial court did not deprive petitioner of the right to present a defense or his right of confrontation. Id., at *9 n.6. For the reasons given by the Michigan Court of Appeals, this Court finds that the exclusion of evidence about the officers' prior shootings did not render petitioner's trial so fundamentally unfair as to deprive him of his federal constitutional rights.

Even if constitutional error occurred, the evidence against petitioner was substantial. In addition to Officer Counts' testimony, Gregory McDonald testified that the first gunshots could have come from petitioner's car and that the officer raised his

gun after the first shots were fired.  (5/10/94 Trial Tr., at 472-73.)  McDonald also admitted at trial that he initially informed the police that the first shots came from petitioner or petitioner's car.  (5/11/94 Trial Tr., at 510, 520.)

Furthermore, if the trial court had permitted defense counsel to introduce evidence of the prior shootings, the prosecutor probably would have elicited testimony that the police conducted an internal investigation in all three of the prior shooting incidents and determined that Officer Counts acted within the Police Department's guidelines for discharging his weapon.  (5/10/94 Trial Tr., at 254, 256-57; Hardaway, 2013 WL 132710, at *8.)  The Court therefore believes that, even if the trial court violated petitioner's constitutional rights, the error could not have had a "substantial and injurious effect or influence" on the jury's verdict, and was harmless.  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

### 3.  Police Procedures

Petitioner contends that the trial court violated his right of confrontation and his right to present a defense by prohibiting him from asking Officer Counts about procedures the police use when interrogating suspects and advising suspects of their constitutional rights.   According to petitioner, Sergeant Humes interviewed Officer Counts on the night of the shooting, and, at some point during the interview, Sergeant Humes read Counts' constitutional rights to him.  Counts apparently refused to make any further comments until he consulted his attorney.

22

Petitioner complains that he was not permitted to ask Officer Counts at what point during the interview did Sergeant Humes read Counts' constitutional rights to him and what was the reason for reading his constitutional rights to him.  Petitioner contends that the trial court's restrictions on his cross-examination of Officer Counts prevented him from attacking Counts' credibility.

Although the Michigan Court of Appeals did not address this issue in its dispositive opinion, the prosecutor objected at trial to defense counsel's questions about police procedures on the basis that the police department's procedures were irrelevant.  The trial court apparently agreed, for it sustained the prosecutor's objection.  (5/10/94 Trial Tr., at 335-37.)  When defense counsel subsequently asked Officer Counts whether he had a choice to answer or decline to answer questions addressed to him during an interview, the prosecutor objected on the grounds that the out-of-court statements were irrelevant hearsay and not probative of the issues because the interview occurred after the shooting.  The trial court once again agreed with the prosecutor and sustained his objection.  (Id., at 352-54.)

As the trial court pointed out, however, Officer Counts was not on trial.  (Id. at 340.)  Furthermore, the court did permit defense counsel to question Officer Counts about being interrogated, and Counts admitted in response to defense counsel's questions that he was advised of his constitutional rights on October 3, 1993, when he was questioned about the shooting.  Officers Counts also admitted that the advice of rights was a warning to be careful about what he said and that anything he said could be used against him.  (Id. at 335-36, 350.)

23

The trial court also permitted defense counsel to question retired Sergeant Kenneth Day about police procedures.  Sergeant Day testified in response to defense counsel's questions that the police follow a routine when an officer is involved in a shooting.  According to Sergeant Day, the procedure consists of having a supervisory officer transport the officer involved in the shooting to the homicide section, having an attorney assigned to the officer, and then questioning the officer in the attorney's presence.  Additionally, the officer involved in the shooting must turn over his weapon to the supervisory officer.  (5/12/94 Trial Tr., at 780-81.)

The trial court also permitted defense counsel to question Officer William Rice about procedures used by the police when an officer is interviewed.  Officer Rice was the officer in charge of the crime scene, and he testified that the police procedure entailed interviewing the officer involved in a case after the officer meets with a department attorney.  (Id., at 813-14.)

Officer Rice testified quite extensively about Officer Counts' three statements to investigating officers.  In response to defense counsel's questions, Officer Rice testified that Officer Counts admitted to him it was possible someone other than petitioner made the comment, "Fucking police."  (Id. at 818-19.)  Officer Counts also stated in his interview with Officer Rice that he (Counts) fired his gun after someone got out of a blue car and pointed a gun at him.  (Id. at 830-31, 834-35.) Officer Counts informed Officer Rice that he identified himself to the occupants of another car at the scene, but, according to Officer Rice, Counts did not say that he conversed with the occupant of the blue car that petitioner was driving.  (Id. at 830-31, 833.)  And, *after* Officer Counts'

24

lawyer appeared, Officer Counts stated that he fired his weapon because he feared for his and his partner's life.  (Id. at 846.)

The Court concludes that petitioner was able to elicit enough testimony and evidence about police procedures for the jury to assess the defense theory and Officer Counts' credibility.  Therefore, Petitioner's right of confrontation and right to present a defense were not violated.

## D.  The Jury Instruction on Intent

Petitioner asserts that the trial court's jury instruction on intent and use of a deadly weapon relieved the prosecution of its burden of proving every element of the offense.  The Michigan Court of Appeals determined that petitioner waived review of this claim by expressing satisfaction with the jury instructions.  Hardaway, 2013 WL 132710, at *11.

### 1.  Procedural Default

Respondent argues that petitioner's claim is procedurally defaulted.  This Court agrees for the following reasons.  First, defense counsel's express approval of the jury instructions, see 5/13/94 Charge to the Jury, at 29, constituted a waiver of appellate review of the issue under Michigan law.  See People v. Carter, 462 Mich. 206, 215-16; 612 N.W.2d 144, 149 (2000) (noting that, where defense counsel expressly approved the trial court's proposed jury instruction and response to the jury's request for evidence, this constituted a waiver that extinguished any error).

Second, the last state court to render a reasoned opinion on the issue was the Michigan Court of Appeals, and it enforced the state procedural rule by denying relief on

25

the basis that defense counsel waived review of the issue when he expressed satisfaction with the jury instructions.  See Hardaway, 2013 WL 132710, at *11.

Third, the procedural rule in question – that an attorney's express approval of a court's procedure constitutes a waiver of appellate review – is an adequate and independent state ground because it does not rely on federal law.  McKissic v. Birkett, 200 Fed. App'x 463, 471 (6th Cir. 2006).  Fourth, petitioner has not alleged "cause" for his procedural default.

In the absence of a showing of cause and prejudice, a petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that failure to consider [his claim] will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would have found him guilty beyond a reasonable doubt . . . ."  House v. Bell, 547 U.S. 518, 538 (2006).

Petitioner has not presented the Court with any new and reliable evidence of actual innocence.  Therefore, the Court's failure to adjudicate the merits of his claim will not result in a fundamental miscarriage of justice.

To summarize, petitioner failed to comply with a state procedural rule that requires an objection at trial to preserve a claim about the jury instructions.  The last state court to review petitioner's claim relied on petitioner's waiver to deny relief.  The rule in question was firmly and regularly followed at the time it was enforced, and petitioner has not shown "cause" for his procedural default or that a miscarriage of justice will result from the failure to consider his claim on the merits.  Thus, petitioner's claim is procedurally defaulted.

### 2.  On the Merits

Even if petitioner's claim were not procedurally defaulted, the only question on habeas review of a jury instruction "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " McGuire, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  To obtain habeas relief, the instruction must have infused the trial with such unfairness as to deprive the petitioner of due process of law.  Id. at 75 (quoting Lisenba v. California, 314 U.S. 219, 228 (1941)).  In other words, "[t]o warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.' " Buell v. Mitchell, 274 F.3d 337, 355 (6th Cir. 2001) (quoting Scott v. Mitchell, 209 F.3d 854, 882 (6th Cir. 2000)).

27

While it is true that "[a] jury instruction that shifts or relieves the state of its burden of proof . . . violates due process," Hanna v. Ishee, 694 F.3d 596, 620 (6th Cir. 2012) (citing Sandstrom v. Montana, 442 U.S. 510, 520–24 (1979)), "permissive inferences do not run afoul of the Constitution." Carter v. Jago, 637 F.2d 449, 456 (6th Cir. 1980) (citing Sandstrom). Here, the trial court instructed the jury that,

> [t]he defendant's state of mind may be inferred from the kind of weapon used, the type of wounds inflicted, the acts and words of the defendant, and any other circumstances surrounding the alleged killing.
>
> You may infer the defendant intended to kill if he used a dangerous weapon in a way that was likely to cause death. Likewise you may infer that the defendant intended the usual results that follow from use of a dangerous weapon. A gun is a dangerous weapon . . . .

(5/13/94 Charge to the Jury, at 15-16.)

Petitioner contends that these instructions relieved the State of its burden of proving the intent element of murder, because a reasonable juror could have concluded that the use of a deadly weapon raised a presumption of malice. But the trial court did not say that the jury must presume malice from the use of a deadly weapon; instead the court instructed the jury that it could infer intent from use of a dangerous weapon. Because this was a permissive inference, the instruction did not violate the Constitution. Petitioner's claim lacks merit in addition to being procedurally defaulted.

**E.  The Trial Court's Supplemental Jury Instruction**

Petitioner alleges that the trial court's response to the jury's announcement that it could not reach a decision was coercive and an incorrect statement of the law that affected the fairness of the trial.

28

### 1. The History of Petitioner's Claim

Defense counsel objected when the trial court proposed to tell the jury that it must resume deliberations after lunch. Defense counsel stated that this instruction was "somewhat coercive." (5/17/94 Trial Tr., at 1007.) The trial court nevertheless proceeded to read the disputed instruction.

Petitioner subsequently raised his claim in his post-conviction motion for relief from judgment. The trial court denied relief on the issue after concluding that "the overall effect of the comment was not coercive" and that, instead, "it stressed the need of the jurors to seriously engage in deliberations." Opinion, at 2, People v. Hardaway, No. 93-012651 (Wayne County Cir. Ct. Aug. 4, 1999). The State's appellate courts denied leave to appeal the trial court's decision.

Petitioner next raised his claim in his first habeas corpus petition. This Court reviewed petitioner's claim on the merits and concluded that the trial court's supplemental jury instructions as a whole were not coercive. See Opinion and Order Denying Habeas Corpus Petition, Hardaway v. Robinson, No. 01-70230, ECF No. 58, at 7 (E.D. Mich. Jan. 3, 2008).

On appeal from this Court's decision in case number 01-70230, the United States Court of Appeals for the Sixth Circuit thoroughly reviewed petitioner's claim and found no merit in it. The Sixth Circuit stated that petitioner was not entitled to habeas relief on his jury-coercion claim because the trial court's determination – that the instruction was not coercive – was not an unreasonable application of federal law. Hardaway, 655 F.3d at 446-48.

29

Petitioner raised his claim again in his appeal of right in the Michigan Court of Appeals.  The Michigan Court of Appeals determined that petitioner did not timely preserve this issue for appellate review because defense counsel first raised his complaint about the jury instruction on the next morning of jury deliberations.  The Court of Appeals also concluded that there was no undue coercion in the trial court's supplemental instruction.  People v. Hardaway, 2013 WL 132710, at *9-10.

**2. Discussion**

When adjudicating a trial court's comment to a deadlocked jury, a reviewing court must determine whether "in its context and under all the circumstances the judge's statement had the coercive effect attributed to it."  Jenkins v. United States, 380 U.S. 445, 446 (1965).  Here, the deliberating jury informed the jury that it was "hopelessly deadlocked" on the first and second counts.  Petitioner objects to the trial court's response that the jury could take a fifteen-minute break and then it would return to the jury room and "deliberate for as long as necessary for [them] to reach agreement." (5/16/94 Trial Tr., at 987).  When the jury informed the trial court a second time that it was still hopelessly deadlocked, the trial court stated:

> even though you were seated, we're really just going to break for lunch and you will return at 2:00 o'clock and you will resume your deliberations. You may go to lunch.  We will ask you to return promptly at 2:00 p.m., and when you're all back seated in the room, at that time you may – you will resume your deliberations.

(5/17/94, Trial Tr., at 1008) (emphasis added).

The Sixth Circuit noted on review of petitioner's claim in his previous habeas case that

30

> a trial judge may properly encourage a deadlocked jury to continue
> deliberating by issuing a supplemental instruction that urges the jury to
> reach a unanimous verdict. Allen v. United States, 164 U.S. 492, 501–02,
> 17 S.Ct. 154, 41 L.Ed. 528 (1896).  These so-called Allen charges serve
> the important purpose of avoiding the social costs of a retrial, including the
> time, expense, and potential loss of evidence that a new trial would entail.
> See Lowenfield v. Phelps, 484 U.S. 231, 237–38, 108 S.Ct. 546, 98
> L.Ed.2d 568 (1988); id. at 252, 108 S.Ct. 546 (Marshall, J., dissenting).
> This court has also generally upheld "verdict-urging" charges, even when
> they contain flaws, e.g., Williams v. Parke, 741 F.2d 847, 850 (6th
> Cir.1984), and despite "troubling" references to trial expense and effort,
> e.g., United States v. Clinton, 338 F.3d 483, 490 (6th Cir. 2003).

Hardaway, 655 F.3d at 448.  In this case, moreover,

> the supplemental charge included several remarks that were sufficient to
> mitigate any coercive effect the comment might have had.  For example,
> the trial judge also instructed the jurors to "try to reach agreement if you
> can do so without violating your own judgment."  And the court
> emphasized that "none of you should give up your honest beliefs about
> the weight or effect of the evidence" for the sake of reaching agreement.

Id.

Although the Michigan Court of Appeals did not cite any federal law when

reviewing petitioner's claim in 2013, it also determined that the trial court's disputed

comments

> did not suggest to the jury that it had to reach some outcome within a
> specified period of time or fail its mission, or otherwise urge the jury to
> reach a verdict as part of its civic duty.  Instead, the court explicitly
> clarified that the jury, still in its first full day of deliberations, had "plenty of
> time" remaining to continue its deliberations.

Hardaway, 2013 WL 132710, at *10.

In conclusion, the context and circumstances of the trial court's disputed remarks

indicate that the court's remarks were not coercive.  Therefore, the state courts' findings

31

that there was no undue coercion were not contrary to clearly established federal law, and petitioner has no right to relief on his claim.

## F.  The Prosecutor

Petitioner claims that the prosecutor committed misconduct by making incorrect statements and illegal arguments.  The Michigan Court of Appeals reviewed petitioner's prosecutorial-misconduct claims for "plain error" on the basis that petitioner did not object during trial to any of the alleged instances of misconduct.  The Court of Appeals subsequently determined that there was no plain error.

### 1. Facts Not in Evidence

Petitioner alleges that the prosecuting attorney argued facts not in evidence when he stated in his opening statement (5/9/94 Trial Tr., at 113) and in his closing argument (5/13/94 Trial Tr., at 936) that Officer Spruiel was shot in his back as he ran away or fled for his life.  Petitioner claims that these remarks were deliberate attempts to defeat his claim of self defense.

The Court agrees with petitioner that there was no testimony indicating that Officer Spruiel was shot as he ran away.  The Michigan Court of Appeals, however, determined that Petitioner did not preserve his claim for appellate review by objecting to the alleged misconduct.

Under state law, "[a]ppellate review of improper prosecutorial remarks is generally precluded absent objection by counsel because the trial court is otherwise deprived of an opportunity to cure the error."  People v. Stanaway, 446 Mich. 643, 687; 521 N.W.2d 557, 579 (1994).  Petitioner failed to object to the prosecutor's comments

32

about Officer Spruiel being shot as he ran away, and the Michigan Court of Appeals relied on that omission to deny relief.  Furthermore, the contemporaneous-objection rule was clearly established and regularly followed at the time of petitioner's trial.  See, e.g., People v. Majette, 39 Mich. App. 35, 36, 197 N.W.2d 78, 80 (1972) (stating that, "[t]he defendants did not object to the prosecutor's remarks at the trial and so appellate review of them is barred unless the error, if any, could not have been [cured] by a cautionary instruction").

Petitioner has not alleged "cause" for his procedural default, nor provided the Court with any new and credible evidence of actual innocence.  Therefore, his claim is procedurally defaulted, and the Court will not review the merits of his claim.

### 2.  The Comment and Question about Petitioner's Motive

Petitioner alleges that the prosecutor also committed misconduct by making an improper argument about petitioner's motive for shooting Officer Spruiel.

On habeas review, "[c]laims of prosecutorial misconduct are reviewed deferentially."  Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).  "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  "In deciding whether prosecutorial misconduct

33

mandates that habeas relief be granted, the Court must apply the harmless error

standard." Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997).

### a. The Comment on Petitioner's Prior Convictions.

Petitioner contends that the prosecutor improperly suggested that petitioner shot

Spruiel due to anger over his two prior convictions and his girlfriend's arrest for carrying

a concealed weapon.  On the subject of petitioner's prior convictions, the prosecutor

stated:

> The defendant with two prior convictions he testified to might be able to
> smell detective – police officers when he sees them, and if the words
> came from him about the police officers during the course of the barrage,
> then I think we do have the crime of Premeditated Murder, that this was
> some anger, some frustration over his own lot in life and maybe a
> paranoia of being harassed.

(5/13/94 Trial Tr., at 938.)

Petitioner claims that it was improper to suggest that he had a grudge against

police officers, because he did not realize Spruiel was a police officer at the time of the

shooting.  The Michigan Court of Appeals did not address this issue in its dispositive

opinion, but the trial court ruled at the beginning of trial that the prosecutor could

introduce evidence of petitioner's prior convictions for breaking and entering and

accessory after the fact to armed robbery.  (5/9/94 Trial Tr., at 12.)

Furthermore, petitioner stated two times in response to the prosecutor's

questions that he had nothing against the police.  (Id., at 909, 913.)  And the trial court

instructed the jurors that the attorneys' statements and arguments were not evidence,

but only meant to help the jurors understand each side's legal theories.  (5/13/94

Charge to the Jury, at 6.)  The trial court also charged the jurors to based their verdict

only on the admissible evidence.  (Id., at 3, 5, 7.) Therefore, even assuming that the

prosecutor's speculation about petitioner's motive for the shooting rose to the level of

constitutional error, the error could not have had a substantial and injurious effect or

influence on the jury's verdict, and was harmless.  Brecht, 507 U.S. at 623.

### b.  The Comment about Petitioner's Girlfriend

Petitioner contends that the prosecutor also erred when he asked petitioner on

cross examination whether petitioner's girlfriend had been arrested for carrying a

concealed objection.  (5/13/94 Trial Tr., at 909-13.)   However, after defense counsel

objected to the prosecutor's question, the trial court charged the jurors to disregard any

comments or questions regarding the possible arrest or conviction of petitioner's

girlfriend.  The court reinforced this instruction by stating, "You should not consider that

information in deciding Mr. Hardaway's case."  (Id., at 974.)  The trial court also

informed the jury at the conclusion of the case that the attorneys' questions were not

evidence and that the jury could consider only properly admitted evidence.  (5/13/94

Charge to the Jury, at 6.)

"[J]uries are presumed to follow their instructions."  Richardson v. Marsh, 481

U.S. 200, 211 (1987).  Therefore, the prosecutor's allegedly improper question about

petitioner's girlfriend could not have had a "substantial and injurious effect or influence"

on the jury's verdict, and was harmless.  Brecht, 507 U.S. at 623.

### 3.  Conclusion on Petitioner's Prosecutorial-Misconduct Claims

To summarize, petitioner's allegation that the prosecutor argued facts not in

evidence is procedurally defaulted because petitioner did not preserve the claim for

appellate review by objecting at trial.  Petitioner's claims about the prosecutor's reference to petitioner's prior convictions and his girlfriend's arrest lack merit because the prosecutor's remarks were harmless, given the trial court's jury instructions. Habeas relief is not warranted on petitioner's claims about the prosecutor.

## G.  Withholding Evidence

The seventh claim alleges that the prosecution withheld exculpatory evidence at the preliminary examination and that this led to petitioner being bound over for trial in state circuit court on a charge of first-degree murder.  The evidence supposedly suppressed was Officer Counts' initial statements during an investigatory interview that he was the first person to start shooting after petitioner exited his car with a gun and that neither Counts, nor Spruiel, identified themselves as police officers at the time.

### 1.  Clearly Established Federal Law

The Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87(1963).  There are three components to a true Brady claim:  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

## 2.  Application

The Michigan Court of Appeals reviewed petitioner's claim for "plain error" because petitioner did not raise his claim in the state trial court.  Petitioner, however, asserts that, at the time, he did not have Officer Counts' initial statement to the investigating officer.  Nor did he have the investigator's report.

Even assuming that petitioner's claim is not procedurally defaulted, he had no constitutional right to a preliminary examination or an adversary determination of probable cause.  Gerstein v. Pugh, 420 U.S. 103, 123 (1975); Dillard v. Bomar, 342 F.2d 789, 790 (6th Cir. 1965).  And he ultimately was acquitted of first-degree murder.

Furthermore, at the preliminary examination, "[t]he prosecutor need not establish beyond a reasonable doubt that a crime was committed.  He need present only enough evidence on each element of the charged offense to lead 'a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [the defendant's] guilt.' "  People v. Perkins, 468 Mich. 448, 452; 662 N.W.2d 727, 730 (2003) (quoting People v. Justice, 454 Mich. 334, 344; 562 N.W.2d 652, 657 (1997)).

Officer Counts testified at petitioner's preliminary examination that petitioner drove by him and Officer Spruiel two times before the shooting.  Officer Counts subsequently observed petitioner return to the area in his Camaro, stop directly across from Officer Spruiel, and then open fire at Spruiel in an initial burst of shots.  (11/12/93 Prelim. Examination Tr., 16-21, 27-29, 63-65).   Officer Counts thought he heard petitioner say, "Fuck the police," as Officer Spruiel fell to the ground, id. at 31-32, but he admitted that he did not identify himself as a police officer to the driver of the Camaro,

37

id. at 56-57.  The parties stipulated that the medical examiner's opinion was that Officer Spruiel died from gunshot wounds to his back and that the manner of death was homicide.  (Id. at 73-74.)

A person of ordinary prudence and caution could conscientiously entertain a reasonable belief from the evidence at the preliminary examination that petitioner intended to shoot and kill Officer Spruiel and that he premeditated and deliberated the killing.  The Michigan Court of Appeals therefore reasonably concluded that the state district court would not have altered its decision to bind petitioner over on the open murder charge if the court had been aware of Officer Counts' prior statements equivocating as to when he began shooting and the source of the profanity.  Hardaway, 2013 WL at *13.  Petitioner therefore suffered no prejudice as a result of the allegedly suppressed evidence at the preliminary examination.  He has no right to habeas relief on the basis of his Brady, claim.[3]

## H.  The Appeal

In his eighth and final claim, Petitioner alleges that he was denied a speedy and meaningful appeal of right.  He asserts that it took the state courts nineteen years to decide his case and that he suffered prejudice as a result of the delay because two witnesses have died, he can no longer afford to retain counsel, evidence has been

---

[3]  In a document titled "Newly Discovered Evidence" (ECF No. 16), petitioner alleges that he recently acquired evidence that the prosecutor withheld a homicide sergeant's memorandum.  Petitioner appears to concede that the content or nature of the sergeant's memorandum cannot be ascertained, and he has not shown that the withheld evidence was exculpatory or that prejudice resulted from the failure to disclose the evidence.  Therefore, petitioner's "newly discovered evidence" does not state a valid Brady claim.

38

destroyed, and he has suffered physical problems as a result of his incarceration.  He seeks an unconditional writ of habeas corpus or a reduction in his minimum sentence.

Respondent argues that petitioner did not exhaust state remedies for this claim because he failed to raise his claim in the Michigan Court of Appeals.  While it is true that a habeas petitioner must fairly present his habeas claims to the state court of appeals and to the state supreme court before raising his claims in a habeas petition, Wagner v. Smith, 581 F.3d 410, 414 (6th Cir. 2009), the rule requiring exhaustion of state remedies, 28 U.S.C. § 2254(b)(1), is not a jurisdictional requirement.  Castille v. Peoples, 489 U.S. 346, 349 (1989).  The Court therefore proceeds to the merits of petitioner's claim.

The Sixth Circuit Court of Appeals has stated that "the Constitution does not require a state to provide a system of appeals, but if a state chooses to do so, the appeal, too, must accord with the basic requirements of due process." United States v. Smith, 94 F.3d 204, 207 (6th Cir. 1996) (citing Evitts v. Lucey, 469 U.S. 387, 393 (1985)).  "The appeal forms an 'integral' and inextricable part of the procedures for determining whether a defendant should be deprived of his life, liberty, or property." Id. An appeal which is inordinately delayed is a meaningless ritual. Id.

The Supreme Court, however, has not held that there is a right to a speedy appeal, and "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1).   It therefore cannot form the basis for habeas relief under AEDPA." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012).

Furthermore, Petitioner ultimately was granted a meaningful appeal of right.  His case did not "languish[] for years without adjudication" in the state court, nor remain on the state court's docket for many years "without meaningful attention."  Cf. Turner v. Bagley, 401 F.3d 718, 725-26 (6th Cir. 2005).  The Court therefore declines to grant relief on petitioner's speedy-appeal claim.

## IV.  Conclusion

The state-court orders and opinions in this case were not objectively unreasonable, nor "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.  The Court therefore DENIES the petition for writ of habeas corpus.

## V.  Certificate of Appealability

Before petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . .   When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate the Court's assessment of the claims that the state courts adjudicated on the merits.  As for petitioner's procedurally defaulted claims, reasonable jurists could not debate whether the Court's procedural rulings are correct or whether the issues state a valid claim of the denial of a constitutional right. The Court therefore declines to issue a certificate of appealability.  Petitioner nevertheless may proceed in forma pauperis on appeal if he appeals this decision, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  May 9, 2016

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 9, 2016, by electronic and/or ordinary mail and also on
Holland Hardaway 163872, Muskegon Correctional Facility,
400 S. Sheridan, Muskegon, MI 49442.

s/Barbara Radke
Deputy Clerk